**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Linda Huber, | : | Case No.  3:06 CV 1968 |
| Plaintiff, | : | |
| v. | : | MEMORANDUM DECISION |
| | | AND ORDER |
| Auglaize County Board of Elections, et al., | : | |
| Defendants. | : | |

The parties have consented to have the Magistrate enter judgment in this civil rights case filed pursuant to 28 U.S.C. § 1331 and the Help America Vote Act, 42 U.S.C. § 15482.  The matter before this Court is the Motion to Disqualify Counsel filed by Defendants, the Auglaize County Board of Elections (Board), Larry Fledderjohann, Diana Hausfeld, Wanda Kogge, Stanley Wietholter, Francia Engle, Jean Burklo, Marry Dee Malueg, Margaret Matheny, Carolyn Campbell, and Edwin A. Pierce (Docket No. 49), Plaintiff's Opposition (Docket No. 56) and Defendant's Reply (Docket No. 62).  An oral hearing was conducted on the merits of the Motion to Disqualify Counsel. For the reasons that follow, the Magistrate finds that Defendants' Motion to Disqualify Counsel is denied.

## THE PARTIES

Plaintiff is a former director of Defendant Board.  She is married to co-counsel of record William E. Huber, II.  William Huber was a member of Defendant Board from 1994 until 1997

(Docket No. 70, pp. 29, 76).

Defendants Fledderjohann, Hausfeld, Engle and Wietholter are members of the Defendant Board. Defendant Kogge is a former member of the Defendant Board. Defendant Burklo, the regional liaison for the Ohio Secretary of State's Office, is a former director of the Defendant Board (Docket No. 70, p. 7). Defendant Malueg is the finance director, Defendant Matheny is the deputy director of the Defendant Board and Defendant Campbell is the director of the Defendant Board. Defendant Kenneth Blackwell, former Secretary of State, has been replaced as a party defendant by Jennifer Brunner, the current Secretary of State. Defendant Pierce was the Prosecuting Attorney for Auglaize County, Ohio. Ken Nuss, the deputy director of the Defendant Board in 2004, is not a party to these proceedings (Docket No. 1, ¶ 23).

## FACTUAL BACKGROUND

On October 19, 2004, Ken Nuss filed a complaint with the Ohio Secretary of State Field Representative alleging violations of Ohio's election law by Defendant Burklo (Docket No. 1, ¶ 23, Docket No. 70, p. 41). Two days later, on October 21, 2004, the Defendant Board conducted an executive session (Docket No. 70, p. 14). Thereafter, Defendant Board issued a memorandum notifying Mr. Nuss of possible disciplinary charges that Defendant Board planned to consider (Docket No. 1, ¶ 25). William Huber, a past member of Defendant Board, asked Defendant Burklo to send him the information on what had occurred in the executive session (Docket No. 70, p. 14). Although she had not signed a retainer agreement or paid a retainer fee, Defendant Burklo wrote a letter to William Huber explaining the charges against her as well as the results of the executive session (Docket No. 70, p. 16; Defendant's Exhibit A). She advised the Board that William Huber was her attorney (Docket No. 70, pp. 32, 52). Although she asked Mr. Huber the amount required

2

for a retainer and requested an itemized bill, neither a retainer fee quote or bill was provided by Attorney Huber  (Docket No. 70, p. 33).

On October 22, 2004, Defendant Pierce advised Defendant Burklo that he was representing the Board as to pending charges of voting irregularities and that she should seek independent legal counsel (Docket No. 70, pp. 40, 41).  Defendant Burklo summarized the charges made by Ken Nuss against her in an e-mail addressed to William Huber, on October 25, 2004 (Docket No. 70, pp. 13, 15, 21, 23, 26, 27).  William Huber did not respond (Docket No. 70, p. 16).  On October 28, 2004, the Ohio Secretary of State advised Defendant Burklo that the Defendant Board was subject to administrative oversight (Docket No. 70, p. 15 and Exhibit B).

Defendant Burklo e-mailed William Huber advising of the "administrative oversight" communication from the Secretary of State on November 7, 2004 by electronic mail (Docket No. 7, Defendant's Exhibit B).  On November 22, 2004, Defendant Burklo e-mailed an update on the "oversight" to William Huber (Docket No. 70, p. 16 and Defendant's Exhibit C).  Mr. Huber responded on December 8 that Defendant Burklo should keep him advised.  On December 16, William Huber advised Defendant Burklo that he had apparently discussed the pending investigation (Docket No. 70, p. 17 and Defendant's Exhibit E).

On or about April 4, 2005, Defendant Burklo received notice that she was being discharged from her position of director by the Secretary of State's Office (Docket No. 70, p. 19).  Defendant Burklo sought William Huber's advice (Docket No. 70, Defendant's Exhibit E, F, & G).  Initially, William Huber suggested a course of action that included a write-in campaign (Docket No. 70, Defendant's Exhibit H).  On the following day, William Huber gave Defendant Burklo advice on the "line to take at this time" (Docket No. 70, Defendant's Exhibit H).  In fact, he advised Defendant

3

Burklo to give a "no comment" response when confronted with allegations of three pending felony charges against her (Docket No. 70, pp. 20, 21, 44). Defendant Burklo claimed that she followed this strategy (Docket No. 70, p. 23). On April 13 and April 14, 2005, William Huber advised Defendant Burklo to contact a local prominent politician for support, advised her how to deliver material to the media and apprised her of a potential conflict of interest involving Mr. Nuss and the Secretary of State's Office (Docket No. 70, Defendant's Exhibits K & I). On April 15, 2005, the Secretary of State removed Defendant Burklo from her position as director (Docket No. 70, p. 19 and Plaintiff's Exhibit 2). Consistent with William Huber's suggestions, Defendant Burklo solicited support from the deputy director of the Darke County Board of Elections (Docket No. 70, p. 24).

On July 18, 2005, William Huber sent an e-mail to Defendant Burklo chronicling the deterioration of their friendship (Docket No. 70, Plaintiff's Exhibit 3). When denying the existence of an attorney-client relationship with Defendant Burklo, Mr. Huber testified that office protocol dictated that his clients enter into a written contract that established an attorney/client relationship (Docket No. 70, p. 74). In this case, he did not maintain logs, time sheets, copies of correspondences as he considered the events leading up to Defendant Burklo's discharge (Docket No. 70, pp. 82, 88). He did not file any pleadings on Defendant Burklo's behalf, make statements to the press on her behalf or represent to third persons that he was her counsel (Docket No. 70, pp. 89, 90). Simply, Mr. Huber did nothing of a legal nature on Defendant Burklo's behalf and he did not consider himself legal counsel in this matter (Docket No. 70, pp. 87-88, 90). He considered the situation political (Docket No. 70, p. 108). William Huber admitted that he had a relationship with Defendant Burklo and her spouse and in the past, he had volunteered to help her address issues with some of the board members (Docket No. 70, p. 80).

4

## __DISCUSSION__

Defendants contend that an attorney/client relationship existed between Defendant Burklo and William Huber.  As a result of the relationship, Mr. Huber acquired confidential information from Defendant Burklo that is relevant to the merits of this case.  Defendants contend, therefore, that William Huber should be disqualified from representing Plaintiff as the subject of Defendant Burklo's numerous prior conversations with Mr. Huber are substantially related to this case.

Plaintiff contends that disqualification is a drastic remedy which is unsupported by the facts. William Huber did not provide Defendant Burklo legal advice as the parties did not enter into an attorney and client relationship.  Instead, Mr. Huber provided political advice.  Since he did not have an attorney-client relationship with Defendant Burklo, Plaintiff argues that no conflict of interest exists.

### *Prior Attorney-Client Relationship*

The Sixth Circuit has established a three-part test for determining whether grounds for disqualification exist.  *Nilavar v. Mercy Health System-Western Ohio,* 143 F. Supp.2d 909, 912 -913 (S.D.Ohio 2001) (*citing Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio,* 900 F.2d 882, 889 (6th Cir.1990)).  First, a prior attorney-client relationship must have existed between the party seeking disqualification and the attorney it seeks to disqualify.  *Id.*  Second, the subject matter of the alleged prior and the present relationship must be substantially related.  *Id.*  Third, the attorney must have acquired confidential information from the party seeking disqualification.  *Id.*

The first part of the *Dana* test requires Plaintiff to establish that Mr. Huber had established an attorney-client relationship with her.  The relationship may be consensual and contractual, or it may be implied.  *Id.* (*citing Hamrick v. Union Township, Ohio*, 79 F.Supp.2d 871, 874 (S.D. Ohio

5

1999)).  The test of whether an attorney-client relationship had been created is essentially "whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client."  *Id.* (*citing Hamrick*, 79 F. Supp. 2d at 875; *quoting Henry Filters, Inc. v. Peabody Barnes, Inc.,* 82 Ohio App.3d 255, 261, 611 N.E.2d 873, 876 (1992)); *Thompson v. Karr,* 1999 WL 519297 (6th Cir. July 15, 1999)(same)).  An "essential element as to whether an attorney-client relationship has been formed is the determination that the relationship invoked such trust and confidence in the attorney that the communication became privileged and, thus, the information exchanged was so confidential as to invoke an attorney-client privilege." *Id.* at 912-913 (*citing Thompson, supra*; *quoting Landis v. Hunt,* 80 Ohio App.3d 662, 669, 610 N.E.2d 554, 558 (1992)).

In the instant case, Defendant Burklo failed to establish that she was a former client of William Huber.  Clearly, during the course of their relationship, Mr. Huber did not represent Defendant Burklo.  There were two unrelated occasions for which Defendant Burklo and her spouse retained legal counsel.  William Huber was not retained in either case (Docket No. 70, pp. 59-61).  The Magistrate finds that a past attorney/client relationship did not exist between Defendant Burklo and William Huber.  Because there is no attorney-client relationship, Defendants cannot establish the coexistence of all three prongs as a basis for disqualification.  The Magistrate finds it unnecessary to address the second and third prongs of the *Dana* test.

### Attorney Huber's participation in the Case

If William Huber is not disqualified from representing Plaintiff, Defendant Burklo requests that William Huber be disqualified from questioning her during depositions, trial or other matters.  The Magistrate finds that since Defendant Burklo has not established an implicit attorney-client

6

relationship that created a confidential relationship, William Huber has no ethical obligation surrounding any confidences or secrets disclosed during their relationship. Thus, the scope of William Huber's representation of Plaintiff cannot be restricted.

For these reasons, the Motion to Disqualify William Huber filed by Defendants Board, Fledderjohann, Hausfeld, Kogge, Wietholter, Engle, Burklo, Malueg, Matheny, Campbell, and Pierce is denied.

So ordered.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Dated: 07/31/07

7