# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Linda Huber, | : | Case No.  3:06 CV 1968 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM DECISION AND ORDER** |
| Auglaize County Board of Elections, et al., | : | |
| Defendants. | : | |

The parties have consented to have the Magistrate enter judgment in this civil rights case filed pursuant to 28 U.S.C. § 1331 and the Help America Vote Act (HAVA), 42 U.S.C. § 15482.  Pending are the following:  Defendants' Motion to Strike (Docket No. 111), Plaintiff's Opposition (Docket No. 112) and Defendants' Response to the Opposition (Docket No. (113); Defendants' Motion for Summary Judgment (Docket No. 92), Plaintiff's Opposition (Docket No. 107) and Defendants' Reply (Docket No. 110).  For the reasons that follow, the Motion to Strike is denied and the Motion for Summary Judgment is granted.

## THE PARTIES

Ken Nuss, the Deputy Director of the Auglaize County Board of Elections (Board) in 2004, is not a party to these proceedings (Docket No. 1, ¶ 23).  Defendant Margaret Matheny replaced Ken Nuss as

Deputy Director of the Board (Docket No. 1, ¶s 13 & 14).

Defendant Jean Burklo was Director of the Board and was employed by the Board during 2003 through April 15, 2005 (Docket No. 1, ¶s 11 and 45).  Plaintiff replaced Defendant Burklo as Director on April 18, 2005 and she held that position until March 2, 2006 (Docket No. 96, p. 10).  At the time this case was filed Defendant Carolyn Campbell was Director of the Board (Docket No. 1, ¶ 13).

Defendant Mary Dee Malueg was the Finance Director and Clerk of the Board (Docket No. 1, ¶ 12).

Defendants Francia Engle, Larry Fledderjohann, Diana Hausfeld, Wanda Kogge and Stanley Wietholter were members of the Board (Docket No. 1, ¶s 6-10).

Defendant Edwin A. Pierce was the Prosecuting Attorney for Auglaize County, Ohio (Docket No. 1, ¶ 16).

Former Secretary of State J. Kenneth Blackwell was sued in his official capacity (Docket No. 1, ¶ 15).

## FACTUAL BACKGROUND

While serving as Deputy Director of Defendant Board, Ken Nuss alleged that he witnessed Defendant Burklo in her capacity of director, permit a judicial candidate, Judge Frederick D. Pepple, to amend and/or alter his declaration of candidacy after it had been presented for filing.  He was also privy to her return of inactive voters to active status without verification (Docket No. 1, ¶s 31 and 42).  On or about October 19, 2004, Ken Nuss filed a complaint with the Secretary of State's field representative alleging violations of Ohio's election laws (Docket No. 1, ¶ 23).  On October 20, 2004, four members of Defendant Board informed Ken Nuss of their intent to discipline him (Docket No. 1, ¶ 25).  Defendant Blackwell placed the Board on administrative oversight pending investigation on October 28, 2004 (Docket No. 1, ¶ 26).  Ken Nuss resigned on November 1, 2004 (Docket No. 1, ¶ 27).

2

Defendant Blackwell removed Defendant Burklo from the position of Director on April 15, 2005 (Docket No. 1, ¶ 45).  The Board appointed Plaintiff to replace Defendant Burklo for a period commencing on April 15, 2005 and ending in February 2006 (Docket No. 92, p. 24/88).  Plaintiff was hired officially on April 18, 2005 (Docket No. 1, ¶ 52).  She contemplated being removed by Defendant Board at the reorganization meeting in February 2006 (Docket No. 92, p. 25/88).  At a board meeting conducted on March 2, 2006, Defendant Board did not reappoint Plaintiff as director (Docket No. 107, Exhibit 3, ¶ 20).

During the course of her employment, Plaintiff claims that she was inadequately trained, denied the use of computer friendly software and that her efforts to implement changes not endorsed by Defendant Burklo were thwarted (Docket No. 1, ¶s 53, 55, 56, 61, 62).  There was no policy for director training and Defendant Board refused to authorize $1,500 to pay for training (Docket No. 92, pp. 24/88, 31/88).  Josie Schaub, Jerry Amick and the Auditor's Office provided minimal training (Docket No. 92, p. 34).  The only training that Plaintiff received was provided by the Delaware County Board of Elections' personnel under the auspices of the Secretary of State Oversight Committee (Docket No. 92, pp. 15/88, 16/88).  During the course of such training, the Delaware County Board of Elections personnel advised Defendant Board that the number of national change of address cards deemed undeliverable in Auglaize County was disproportionate to the population of active voters (Docket No. 92, pp. 13/88-15/88). Plaintiff was not trained on how to purge the computer of inactive voters.  Thus, Plaintiff contends that the county was awarded HAVA funds to which it was not entitled (Docket No. 98, pp. 16/88-19/88).

Plaintiff criticized Defendant Board for their refusal to purchase voter registration software while authorizing expenditures unrelated to running the office (Docket No. 92, p. 30/88).  Although there were several glitches in the voter registration software, Plaintiff opined that Defendant Board was committed to employing the voter registration system employed by Defendant Burklo (Docket No. 92, p. 59).

3

Plaintiff believed that any plan or idea she had in contrast to plans or ideas originating with Defendant Burklo, was automatically discarded by Defendant Board (Docket No. 92, p. 59).  Plaintiff noted that the sole bid accepted for software upgrades was made by a company endorsed by Defendant Burklo (Docket No. 92, pp. 60, 61).  Defendant Board also denied her request to hire a part-time clerk (Docket No. 92, p. 32).

Plaintiff claims that occasionally board members would meet in the hallway before or after meetings (Docket No. 92, p. 36/88).  She recalled that Defendant Board exhibited extreme hostility to her after a public meeting because she had made a formal request for help (Docket No. 98, p. 37/88).  Plaintiff was reluctant to attend board meetings because of the hostility exhibited toward her at the meetings (Docket No. 92, p. 38).  Although the decision to discharge Plaintiff was made during an open session, Plaintiff suspected that Defendant Board made the decision prior to conducting the official meeting (Docket No. 92, pp. 39, 41).

Plaintiff concluded from what she read in the paper that extraordinary consideration was given to Judge Pepple after he filed his declaration with the Board (Docket No. 92, pp. 20/88-22/88).  Plaintiff also learned from the media that Defendant Burklo permitted a third party access to Defendant Board's computer system (Docket No. 92, p. 42).

When Plaintiff was discharged by Defendant Board, she was without health insurance for a couple of months.  She also lost accrued vacation, sick time and wages (Docket No. 92, p. 64).  The vacation and sick time did, however, carry over to her new employment (Docket No. 92, p. 66).  During the two months that she was unemployed, she suffered from depression (Docket No. 92, p. 67).

Defendant Campbell succeeded Plaintiff in the position of Director and Defendant Matheny was appointed Deputy Director (Docket No. 1, ¶s 13 & 14).  Defendant Pierce requested the appointment of a special prosecutor to address the propriety of the judicial candidate's acts in altering the declaration

4

(Docket No. 1, ¶ 94).  Defendant Pierce did not seek a special prosecutor to address the inaction of Defendant Board to pursue legal remedies against the judicial candidate and Defendant Board (Docket No. 1, ¶s 94 & 113; Docket No. 98, pp. 50/88-51/88).

## PROCEDURAL BACKGROUND

Plaintiff filed an eleven-count Complaint in this Court.  Defendants Campbell, Matheny and Pierce have been terminated as parties to this litigation (Docket No. 77).

Defendant Blackwell, in his official capacity, was awarded judgment as a matter of law.  During the pendency of this litigation, the current Secretary of State, Jennifer Brunner, replaced Defendant Blackwell in her official capacity.  Since there were no legally cognizable claims against the Office of the Secretary of State, Defendant Brunner has been effectively eliminated as a party to this litigation.

The remaining Defendants which includes the Board, Burklo, Engle, Fledderjohann, Hausfeld, Kogge, Malueg and Wietholter filed a Motion to Strike and Motion for Summary Judgment.  Plaintiff opposes both Motions.

## DISCUSSION

1.    *Motion to Strike*

Defendants seek an order striking:  (1) paragraphs 13 and 14 of the Affidavit of Linda Huber[1]

---

[1]

¶ 13. Carolyn Campbell was appointed as director with no formal application process, interview of potential applicants, and as a result of private discussions between a majority of Board members prior to the vote.  The OHIO REVISED CODE requires that the Board carefully deliberate upon its appointment of a director and, of course, no records reflect any such activity.  Thus, practices of meeting in closed session had also occurred previously when Peg Matheny was hired as a clerk against the advice of Slusser and the Prosecuting Attorney.

¶ 14. The improper inclusion of persons on the voter registration rolls of Auglaize County by defendant Burklo allowed for additional federal funds to be received by the County for the elections' purposes given that funding was driven by the number of registered voters.

(Docket No. 107, Exhibit 1) and (2) paragraph 21 of the Affidavit of Toni Slusser[2] (Docket No. 107, Exhibit 2).

A.      *Motion to Strike Standard*

There is no basis in the Federal Rules to strike items such as an affidavit or a brief, or portions thereof.  *Michaels v. City of Vermilion,* 2007 WL 893185, * 2 (N. D. Ohio 2007) (*citing McLaughlin v. Copeland,* 435 F. Supp. 513 (D. C. Md. 1977)).  In fact, a decision in this district, affirmed by the Sixth Circuit Court of Appeals, refused to employ Rule 12(f) to strike an affidavit because "the rule relates only to pleadings and is inapplicable to other filings."  *Id.* (*citing Dawson v. City of Kent,* 682 F. Supp. 920 (N. D. Ohio 1988), *affirmed* 865 F.2d 257 (6th Cir. 1988)).  In addition, Rule 56(e) does not authorize courts to strike matters from the record, it only requires that supporting or opposing affidavits "shall set forth such facts as would be admissible at trial."  *Id.* (*citing* FED. R. CIV. P (56(e)).

B.      *Conclusion*

In this case, a motion to strike is not the proper vehicle to strike the Affidavits of Plaintiff or Toni Slusser.  For that reason alone, Defendants' requests to strike must be denied.

2.      *Motion for Summary Judgment*

In the Complaint, Plaintiff asserts the following claims against Defendant Board:

| | |
|---|---|
| Count One | Fraudulent procurement of HAVA funds |
| Count Two | Sunshine Law Violation |
| Count Three | Wrongful discharge |
| Count Four | *Quo Warranto* |
| Count Five | Failure to perform Statutory Duties |
| Count Six | Election Falsification |
| Count Eight | Interference with Contract |

---

[2]

"The other issue of importance was that in their appointment process there was no indiction in minutes prior to that meeting that they had talked with applicants or conducted interviews or discussed hiring practices.  They simply voted to appoint Carolyn Campbell which seemed to indicated that the Board members had at some point collectively discussed and agreed on the selection of who the new Director would be. which if true, may have been a violation of the Sunshine Laws."

| Count Nine | Deprivation of Rights |
|---|---|
| Count Ten | Prospective Advantage |
| Count Eleven | Ohio Whistleblower Statute |

Plaintiff alleged in Count Seven that the prosecutor failed to pursue the proper legal remedies against Judge Pepple.  The claim against the prosecutor was dismissed.

Defendants contend that they are entitled to judgment as a matter of law because:  (1) in Count One, Plaintiff failed to demonstrate that procurement of HAVA funds was fraudulent, (2) there is a lack of evidence that Defendant Board violated Ohio's Sunshine Law, (3) Plaintiff's claim for wrongful discharge lacks merit, (4) Plaintiff cannot maintain an action quo warranto, (5) Plaintiff does not have standing to assert an election falsification claim and in the alternative,  Plaintiff's claim for election falsification is barred by the doctrine of collateral estoppel, (6) there is no evidence that a contract existed between Plaintiff and Defendant Board, (7) Plaintiff cannot demonstrate that Defendant Board interfered with her prospective advantage, and (8) Plaintiff cannot prove a violation of Ohio's Whistleblower Statute. Defendants argue that there is no genuine issue of material fact as to any of these issues.

A.      *Summary Judgment Standard*

The applicable legal standard provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Jarrett v. CSX Transportation, Incorporated,* 2008WL 4239148, *2 -3 (N. D. Ohio 2008) (*citing* FED. R. CIV. P. 56(c)). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case.  *Id.* (*citing Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir. 2001)).  A fact is material if its resolution will affect the outcome of the lawsuit.  *Id.* (*citing Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998)).

The moving party meets its burden by "informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (*citing Celotex Corp. v. Catrett,* 106 S. Ct. 2548 (1986) (*quoting* FED. R. CIV. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* Once the moving party satisfies this burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Id.* (*citing Matsushita Electrical Industrial Company v. Zenith Radio Corporation,* 106 S. Ct. 1348, 1355-1356 (1986)). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* Nor can the nonmoving party "rely merely on allegations or denials in its own pleading." *Id.* (*citing* FED. R. CIV. P. 56(e)).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Id.* (*citing National Enterprises, Incorporated v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997)). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Id.* (*citing 60 Ivy Street Corporation v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (*citing First National Bank of Arizona v. Cities Services Company,* 88 S. Ct. 1575, 1589-1590 (1968); *see also Celotex, supra*, 106 S. Ct. at 2552). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Incorporated v. All-Lock Company,* 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

B. *Count One: Fraudulent Procurement of HAVA Funds*

Plaintiff alleges that Defendants violated provisions of HAVA by failing to purge the voter

8

database of inactive voters. Increased HAVA funds were obtained based on inflated voter lists. Receipt of HAVA funds based on this inaccurate number of voters constituted an act of fraud.

HAVA, which Congress passed in response to problems identified in the 2000 presidential election, provides, in relevant part, that states must create and maintain a computerized statewide voter registration list defined, maintained, and administered at the state level that contains the name and registration information of every legally registered voter in the state and assigns a unique identifier to each legally registered voter in the state. 42 U.S.C. § 15483(a)(1)(A) (Thomson/West 2008). That database must meet certain minimum standards. *League of Women Voters of Ohio v. Blackwell*, 432 F. Supp. 2d 723, 731 (N. D. Ohio 2005). In general, the appropriate state or local election official shall perform list maintenance with respect to the computerized list on a regular basis. 42 U. S. C. § 15483(2)(A) (Thomson Reuters/West 2008). If an individual is to be removed from the computerized list, such individual shall be removed in accordance with the provisions of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg et seq.), including subsections (a)(4), (c)(2), (d), and (e) of section 8 of such Act (42 U.S.C. 1973gg-6)). 42 U. S. C. § 15483(2)(A)(i) (Thomson Reuters/West 2008).

When the burden shifted to Plaintiff to set forth specific facts showing a triable issue, she failed to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of this dispute. In an affidavit, Plaintiff claimed that Defendant Burklo's failure to alter the role of registered voters resulted in the receipt of federal funds for inactive voters (Docket No. 107, Exhibit 2, ¶ 14). However, in her deposition, Plaintiff admitted that she had no physical evidence that Defendant Burklo had intentionally put inactive voters in the system (Docket No. 96, pp. 17-18). Plaintiff had no knowledge of how HAVA funds were received or how much Auglaize County, Ohio, received (Docket No. 96, p. 18). Plaintiff also admitted that she had no physical evidence that Auglaize County, Ohio, received increased HAVA funds because of alleged inflated voter registration lists (Docket No. 96, p. 19).

9

In fact, because Plaintiff had nothing "to do with" HAVA funds, she admitted that she was uncertain if Auglaize County, Ohio received any HAVA funds, the amount of funds received, if any, and what expenses were paid from the fund (Docket No. 96, pp. 77-78).  Based on this testimony, the Magistrate cannot find that there is a genuine issue of material fact regarding the receipt of HAVA funds.

        *C.*    *Count Two:*    *Sunshine Law Violations*

Plaintiff challenges the propriety of the Defendant Board's decision to discharge her on two levels.  First, Defendant Board deliberated regarding their decision to discharge her prior to their scheduled session.  Second, Defendant Board made a decision to discharge her in an executive session.  The decision to terminate her was made in violation of the Sunshine Law.

Ohio's Sunshine Laws are codified under OHIO REV. CODE § 121.22, the Open Meetings Act (Act).  Section 121.22 of the Act requires public officials who meet to consider official business to do so in public.  *Krause v. City of Ashland,* 2006 WL 3386913, *2 (N. D. Ohio 2006) (*citing State ex rel. Cincinnati Post v. City of Cincinnati,* 76 Ohio St.3d 540, 542 (Ohio 1996)).  The Act specifies that any resolution, rule, or formal action is invalid unless it is adopted in an open meeting of the public body, and that all meetings of a public body are "declared to be public meetings."  *Id.* (*citing* OHIO REV. CODE §§ 121.22(C), (H)).  The Open Meeting Act specifies that "every public body, by rule, shall establish a reasonable method whereby any person may determine the time and place of all regularly scheduled meetings and the time, place, and purpose of all special meetings.  *Id.*  A public body shall not hold a special meeting unless it gives at least twenty-four hours' advance notice to the news media that have requested notification.  *Id.* (*citing* OHIO REV. CODE § 121.22(F)).  Finally, upon proof of violation of the Act, the court shall issue an injunction to compel the public body to comply with the statute and pay a civil forfeiture of five hundred dollars.  *Id.*

Defendant Board met their burden of identifying evidence in Plaintiff's deposition that, if believed, demonstrates the absence of a genuine issue of material fact with respect to the violations of the Sunshine Law.  Plaintiff's challenge to Defendant Board members' meeting before the meeting is based on (1) what she read in the newspaper and (2) her impression that a decision of such magnitude could not be made so quickly unless preordained (Docket No. 96, p. 38-39).  Such conjecture neither constitutes evidence that would be probative at trial nor evidence that would be admissible to resolve the parties' differing versions of the dispute at trial.

Toni Slusser indicated in her affidavit, that the speed with which Defendant Board approved the appointment of Carolyn Campbell is evidence that the selection was made prior to the official meeting (Docket No. 107, Exhibit 3, ¶ 21).  Ms. Slusser speculated that such pre-meeting dealing was indicative of a Sunshine Law violation.  Again, such conjecture does not show that there is some existence of doubt that the meeting requirements of the Sunshine Law were violated.  Toni Slusser's affidavit is not sufficient to create an issue of material fact.

Carolyn Campbell testified that she was asked to attend the March 2005 board meeting which was apparently conducted in a public forum (Docket No. 103, pp. 17-19).  There is nothing to indicate that the resolution, rule, or formal action taken to appoint Carolyn Campbell to the position of director was invalid because it was not adopted in an open meeting.

Defendants Fledderjohann, Malueg, Wietholter all confirmed that the meeting to hire Ms. Campbell was convened as a public meeting (Docket No. 101, p. 48; Docket No. 102, p. 54, Docket No. 106, p. 47).  The overwhelming evidence is that public access to the board meetings was provided.

Next, Plaintiff's claim that Defendant Board erred by making a decision to discharge her in an executive session is inconsistent with the facts adduced in her deposition.  In her Complaint, Plaintiff

11

claims that she complied with the notice requirements by calling the media (Docket No. 1, ¶ 100).  In her deposition, Plaintiff admitted that Defendant Board's decision not to reappoint her was done in an open session or public meeting (Docket No. 96, p. 41/88).  Defendant Board followed the procedural requirements necessary to comply with Ohio's Sunshine Law.  Clearly, there is no violation of the Sunshine Law as alleged by Plaintiff in Count two of her Complaint.

In her Opposition, Plaintiff claims that on one occasion, Defendant Board went into an executive session after recognized hostility between Plaintiff and "Diana" during a board meeting.  Plaintiff was not persuaded that adequate notice was given to the public before going into an executive session to discuss personnel issues.  However, under OHIO REV. CODE § 121.22(G), the members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of any of matter related to the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee.  Notice need not be given if the board chooses to hold an executive session at a regular meeting.  Plaintiff's allegation, without proof, that Defendant Board erred by going into an executive session to discuss personnel issues does not establish a violation of the Sunshine Laws.

    D.    Count Three:  Wrongful Discharge

Plaintiff submits that she was removed from office in a session that violated OHIO REV. CODE § 121.22 and was in violation of public policy.  Therefore the resolution at the board meeting was invalid unless adopted at a public meeting.  In her Opposition to the Motion for Summary Judgment, Plaintiff argues that Board violations of the Whistleblower Protection Act, the Sunshine Law and the directives of the Secretary of State, constituted a constructive wrongful discharge.

12

Under Section 121.22(C), all meetings of any public body are declared to be public meetings open to the public at all times.  A member of a public body shall be present in person at a meeting open to the public to be considered present or to vote at the meeting and for purposes of determining whether a quorum is present at the meeting.  Except that the members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of considering the dismissal of a public employee.  OHIO REV. CODE § 121.22 (G) (1) (Thomson Reuters/West 2008).  A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purpose specifically authorized in division (G) of this section and conducted at an executive session held in compliance with this section.  OHIO REV. CODE § 121.22 (H) (Thomson Reuters/West 2008).

The Magistrate acknowledges the resolution adopting Plaintiff's discharge had to be appropriately enacted to be valid.  Plaintiff has failed to present some significant probative evidence which makes it necessary for the Magistrate to find that Defendant Board conducted an executive session to discuss her dismissal or that the resolution adopting her dismissal was not appropriated in an open session.  In effect, Plaintiff does not present sufficient evidence that there are differing versions for dispute.

In her Opposition to the Motion for Summary Judgment, Plaintiff alleges that she was constructively discharged because of the Board's continuing violations of law.  Specifically, the Board gave little deference to the Whistleblower Act, the Sunshine Law and the directives of the Secretary of State.

Based on the evidence submitted and a thorough review of the record, the Magistrate finds that Plaintiff is unable to show that she was constructively discharged.  She accepted the appointment to

Director contemplating that she would serve through the reorganization meeting in February 2006. She served in the capacity of Director until March 2, 2006. Plaintiff characterized her relationship with the Board as negative because they violated the Whistleblower Act, Sunshine law and directives of the Secretary of State. During the course of her tenure, she did not claim that she was suspended, demoted, docked pay, or otherwise formally disciplined. She failed to prove that Defendant Board violated the Whistleblower Act, that Defendant Board failed to conduct business in an open forum or provide adequate notice of the open forum or that Defendant Board violated directives given by the Secretary of State. Plaintiff failed to present evidence that the Defendant Board threatened or made subtle threats to remove her prior to the conclusion of her term. The Magistrate concludes that the record fails to support a finding that the working conditions were so intolerable that a reasonable person would have felt compelled to resign.

> E.    Count Four:   Quo Warranto

Plaintiff alleges that Defendant Board violated a number of Ohio's election laws. Plaintiff seeks a writ of *quo warranto* to remove Defendant Board from office.

The federal remedy of *quo warranto* deals with the right of an individual to hold an office or position. *Smith v. Dearborn Financial Services, Incorporated*, 982 F. 2d 976 (6th Cir. 1993). The remedy does not afford relief for official misconduct and cannot be used to test the legality of the official action of public or corporate officers. *United States v. Billheimer*, 169 F. Supp. 2d 763, 766 (S. D. Ohio 2000). As to the adequacy of state remedies, there is Ohio authority denying an individual a right to maintain quo warranto proceedings unless the individual is seeking public office. *State ex. rel. Newell v. Jackson*, 118 Ohio St.3d 138, 886 N. E. 2d 846 (2008); *State ex. rel. East Cleveland Fire Fighters' Association*, *Local 500, IAFF v. Jenkins*, 96 Ohio St. 3d 68, 771 N.E. 2d 251 (2002); *Wright v. Kings Path Condominium*

*Group*, 145 Ohio App. 3d 275, 762 N. E. 2d 477 (2001).  The availability of *quo warranto* action is limited to that individual seeking office and to the state government.  *Id.*

To the extent that Plaintiff's Complaint seeks relief for official misconduct, *quo warranto* cannot be employed to determine whether Defendants violated election laws.  The federal and state remedies of *quo warranto* are not applicable to his case.

### F.      Count Five:    Failure to Perform Statutory Duties

Plaintiff contends that Defendant Board failed to perform their statutory duties by:  (1) giving Defendant Burklo unfettered authority and discretion without oversight, (2) failing to prevent and/or remedy repeated election law violations, (3) failing to review the validity of nominating petitions, and (4) failing to ensure that the voter registration database contained the names of active voters.  These duties were delineated under OHIO REV. CODE § 3501.11.  Defendant does not address these issues in the Motion for Summary Judgment and Plaintiff does address the merits of such issues in her Opposition to the Motion for Summary Judgment.  Thus, the issues raised in Count Five of the Complaint are reserved for trial.

### G.      Count Six:    Election Falsification Claim

In Count Six of the Complaint, Plaintiff's allegation of election falsification is twofold.  First, Defendant Burklo authorized Frederick Pepple to alter his nominating petition and then failed to disclose that he had altered his petition to Defendant Board.  Second, Defendant Board acquiesced in the alteration, thus, they knowingly gave Defendant Burklo apparent authority to bind them for her acts.  Plaintiff claims that as a taxpayer she has standing to bring these claims against Defendants.

Defendants contend that Plaintiff does not meet the requirements derived from Article III of the United States Constitution.  Quite simply, Plaintiff lacks standing to assert this election falsification claim

15

under these circumstances. In the alternative, Defendants argue that Plaintiff's election falsification claim is barred by the doctrine of collateral estoppel.

In order for a federal court to exercise jurisdiction over a matter, the party seeking relief must have standing to sue. *Zurich Insurance Company v. Logitrans, Incorporated*, 297 F.3d 528, 531 (6th Cir. 2002). Article III standing is a jurisdictional requirement that cannot be waived. *Id.* the issue of jurisdiction may be raised at any time in the proceeding. *Id.* (*citing* Fed. R. Civ. P. 12(h)(3)).

Standing is a "bedrock requirement" of Article III, § 2's grant to the federal courts of jurisdiction over cases and controversies. *Kucinich v. Defense Finance and Accounting Service,* 183 F. Supp. 2d 1005, 1008 (N. D. Ohio 2002) (*citing Valley Forge Christian College v. Americans United for Separation of Church & State, Incorporated,* 102 S.Ct. 752, 757-758 (1982)). The Supreme Court has said in no uncertain terms that: [n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Id.* (*citing Simon v. Eastern Kentucky Welfare Rights Organization,* 96 S.Ct. 1917, 1923 (1976)).

To meet Article III's standing requirement, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* (*citing Allen v. Wright,* 104 S.Ct. 3315, 3324 (1984)). Furthermore, the alleged injury to the plaintiff must be "an invasion of a legally protected interest which is ... concrete and particularized," *Id.* (*citing Lujan v. Defenders of Wildlife,* 112 S.Ct. 2130, 2136 (1992)), and must be "traditionally thought to be capable of resolution through the judicial process." *Id.* (*citing Flast v. Cohen,* 88 S.Ct. 1942, 1951 (1968)). The Supreme Court has also suggested that the standing inquiry is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the federal government was unconstitutional." *Id.* (*citing Raines v. Byrd,* 117 S.Ct. 2312,

16

2317 (1997)).

Plaintiff was hired to replace Defendant Burklo as director after she purportedly permitted Judge Pepple to alter his petition (Docket No. 96, p. 22).   During Plaintiff's tenure, Defendant Board meticulously scrutinized petitions  submitted for certification so Plaintiff speculated that Defendant Board should have known that Judge Pepple altered portions of the petition (Docket No. 96, p. 21).  However, Plaintiff was neither present when Judge Pepple purportedly removed the petition or altered it; nor was she involved with the board at that time.  She admitted that her knowledge of the events was derived from the media (Docket No. 96, pp. 21, 22).

Whereas the Magistrate acknowledges Plaintiff's taxpayer status and the right to sue under *Flast*, Plaintiff has not suffered an injury to herself that is concrete, particularized or traceable to the acts of Defendants in their decision to permit Judge Pepple to alter his petition.  For this reason, Plaintiff cannot make a prima facie case for having standing to sue Defendants for election falsification as alleged in her Complaint.  Her claim of election falsification must therefore be dismissed.  The Magistrate does not address Defendants' alternate argument that Plaintiff's claim is barred by the principles of collateral estoppel.

H.      Count Eight:   Interference with Contract

Plaintiff argues that Defendant Board interfered with her employment contract by failing to train her, creating obstacles to implementing polices that would "contravene the desires" of Defendant Burklo, falsely accusing her of missing deadlines and keeping necessary information from her.

A breach of contract claim requires plaintiff to establish four essential elements.  First, the existence of a contract.  Second, performance by plaintiff.  Third, breach by defendant.  Finally, damage

or loss to Plaintiff.  *Ziegler v. Findlay Industries, Incorporated,* 464 F. Supp. 2d 733, 740 (N. D. Ohio 2006) (*citing Doner v. Snapp,* 98 Ohio App.3d 597, 600-01, 649 N.E.2d 42 (1994) (affirming summary judgment on breach of contract claim where Plaintiff failed to show damages).

Even if the evidence is viewed most favorable to Plaintiff, Plaintiff cannot show the existence of a contract.  In fact, she denied that a contract existed between the parties (Docket No. 96, p. 23).  Plaintiff has failed to establish the necessary elements of her claim for breach of contract.

I.     *Count Nine:    Deprivation of Rights*

Plaintiff argued that she was deprived of rights provided under 42 U. S. C. §§ 1981, 1982, 1983 and 1985.  Since the parties fail to argue the merits of such claims in the Motion for Summary Judgment or the Opposition to the Motion for Summary Judgment, the Magistrate reserves such issues for trial.

J.     *Count Ten:     Prospective Advantage*

In Count Ten of her Complaint, Plaintiff makes a claim that Defendants should not benefit from their significant and considerable misconduct.  Specifically, by violating the Whistleblower Statute, the Sunshine Law and the directives of the Secretary on administrative oversight, Defendants interfered with her ability to perform her job, therefore preventing her from gaining the benefit of her contract.

Ohio law recognizes both tortuous interference with a business relationship and tortuous interference with contract rights claims.  *Jean v. Works,* 2006 WL 1966644, *8 (N. D. Ohio 2006) (*citing Re/Max International, Incorporated v. Smythe Cramer Company,* 265 F. Supp.2d 882, 890 (N. D. Ohio 2003); *A & B-Abell Elevator Company, Incorporated v. Columbus/Central Ohio Building & Construction Trades Council,* 73 Ohio St.3d 1 (1995)).  "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to

18

perform a contract with another."  *Id.*  Tortuous interference with a contract requires proof of the existence of a contract, the wrongdoer's knowledge of the contract, the wrongdoer's intentional procurement of the contract's breach, lack of justification or privilege and resulting damages.  *Aetna Casualty and Surety Company v. Leahey Construction Company, Incorporated*, 22 F.Supp.2d 695, 704 -706 (N. D. Ohio 1998).

Even if the Magistrate assumes that Defendants violated the terms of the Whistleblower statute, the Sunshine Law and the Secretary of State's directives, Plaintiff fails to satisfy the first and second element of this tort.  Plaintiff gives no evidence that a legally protected relationship in the form of a contract existed between Plaintiff and Defendant Board.  In fact, Plaintiff provides evidence to the contrary.  In her deposition, she admitted that no contractual relationship existed between Plaintiff and Defendant Board (Docket No. 96, p. 23).  Accordingly, Plaintiff cannot make a prima facie case for interference with a contractual relationship.

K.     *Count Eleven:*          *Ohio's Whistleblower Protection Act*

During the course of her tenure as director, Plaintiff discussed Defendant Board's failure to provide training or part-time personnel and Defendant Board's "secrecy" with the media (Docket No. 96, pp. 63-64).  Plaintiff conducted an investigation and advised the media of the directives of the Board and what she perceived as illegal activity by Defendant Board.  Plaintiff concedes that she was not subjected to adverse employment action as a result of any one of these activities (Docket No. 96, pp. 64-65).  She was discharged based on her efforts as a whole.

An employee who, in the course of his or her employment, learns of a violation that the employer has the power to correct to take the following steps before filing a written report with a prosecuting authority:  1) orally notify his or her supervisor of the violation; 2) file with the supervisor a written

19

report providing sufficient detail to identify and describe the violation; 3) give the employer twenty-four hours after the oral notification or receipt of the report (whichever is earlier) to correct (or make a good faith effort to correct) the violation. *Avery v. Joint Township District Memorial Hospital,* 504 F. Supp. 2d 248, 254 (N. D. Ohio 2007) (*citing* 42 U. S. C. § 4113.42); *Contreras v. Ferro Corporation*, 73 Ohio St.3d 244, 250-251, 652 N.E.2d 940 (employee failed to give employer oral notice, written report, and opportunity to correct violation before notifying outsiders). An employee, moreover, must file a whistleblower action within 180 days after the date of the employer's retaliatory or disciplinary action. *Id.* (*citing* OHIO REV. CODE § 4113.52(D)). The complainant must strictly comply with the statute's requirements. *Id.* at 254.

It is uncontroverted that Plaintiff orally apprised Defendant Board of its outdated voter registration lists, questioned Defendant Board's directives that were the antitheses of the Secretary of State's directives, complained that she was inadequately trained and her suspicions that Defendant Fledderjohann had illegally entered the elections office. Because Plaintiff failed, however, to allege or demonstrate that she filed a written report with Defendant Board identifying these infractions, she did not comply with the whistleblower statute's requirements. Plaintiff, as a result, cannot maintain an action for violation of terms embodied specifically within Ohio's whistleblower statute.

## CONCLUSION

For the foregoing reasons, the Motion to Strike is denied and the Motion for Summary Judgment is granted as to Counts One, Two, Three, Four, Six, Eight, Ten and Eleven. Defendant did not address Counts Five, Seven and Nine in the Motion for Summary Judgment; accordingly, Counts Five, Seven and Nine are reserved for resolution at trial. A telephone status conference is scheduled for **Wednesday,**

**February 25, 2009, at 3:30 p.m.** and the Court will contact the parties..

So ordered..

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: February 11, 2009

21